United States District Court
Southern District of Texas

**ENTERED**

January 07, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BARBARA LORRAINE CATES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-2935 |
| | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendant's Cross-Motion for Summary Judgment (Doc. 9) and Plaintiff's Motion for Summary Judgment (Doc. 11). The court has considered the motions, the responses, the administrative record, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's Cross-Motion for Summary Judgment be **DENIED** and Plaintiff's Motion for Summary Judgment be **GRANTED**.

## I. Case Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Social Security Administration ("SSA") Commissioner ("Commissioner" or "Defendant") regarding Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act").

Having reviewed the administrative record and the parties'

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 3, Ord. Dated Aug. 27, 2018.

briefs, the court finds it necessary to address only one issue, which, by itself, requires remand.  Substantial evidence does not support the administrative law judge's ("ALJ") determination that Plaintiff could lift and/or carry twenty pounds occasionally and, therefore, could perform a limited range of light work.  The court discusses only the record evidence relevant to this issue.

A.  **Medical Evidence and Administrative Proceedings**

Plaintiff was born on September 5, 1973, and was forty-one years old on the alleged disability onset date of September 9, 2014.[2] Between the alleged disability onset date and September 21, 2017, the date of the ALJ's decision, Plaintiff received medical treatment for multiple physical conditions, in particular, fibromyalgia, Hashimoto's thyroiditis,[3] and headaches.[4]

At a fibromyalgia consult on November 26, 2014, Mujahed Alikhan, M.D., ("Dr. Alikhan") noted diffuse joint pain lasting all day and causing Plaintiff's inability to lift anything.[5] Plaintiff

---

[2]    See Doc. 7, Tr. of the Admin. Proceedings ("Tr.") 145-47, 156-68, 168, 347-48, 387, 415, 436. A handwritten application dated September 11, 2015, listed September 6, 2014, as the alleged onset date, but all of the SSA's documentation indicated that September 9, 2014, was the alleged onset date. Compare Tr. 348 with Tr. 146-47, 156, 158, 168.

[3]    "Hashimoto's thyroiditis is an inherited thyroid disorder in which the body's immune cells mistakenly attack the thyroid gland. This attack damages thyroid cells and interferes with the gland's ability to produce thyroid hormone." Hashimoto's Thyroiditis Directory, WebMD (undated), https://www.webmd.com/women/hashimotos-thyroiditis-directory.

[4]    See generally Tr. 545-71, 582-99, 617-18, 619, 664-68. Plaintiff also received treatment for various psychiatric disorders, including bipolar disorder. See generally Tr. 516-38, 634-39, 650-57, 682-723, 802-22.

[5]    See Tr. 557.

reported that pain medication offered "minimal relief."[6]

On January 5, 2015, Plaintiff saw Thomas R. Lux, M.D., ("Dr. Lux"), whose treatment note stated that Plaintiff experienced fatigue, weakness, and shoulder pain and was unable to perform activities of daily living ("ADLs") secondary to fibromyalgia.[7]

On January 15, 2015, Achi P. Chary, M.D., ("Dr. Chary") performed an internal medicine consultative examination.[8]  Dr. Chary noted that, for the prior two years, Plaintiff had been diagnosed with fibromyalgia, which, at times, prevented her from getting out of bed.[9]  The doctor also indicated that Hashimoto's disorder caused generalized weakness and fatigue.[10]  At a consultative mental status examination on January 17, 2015, Plaintiff reported the inability to push a vacuum cleaner.[11]

On examination, Dr. Chary observed tenderness in Plaintiff's elbow and hand joints, but found her muscle strength to be 5/5 in the upper and lower extremities, her grip strength to be normal, and her ability to reach, handle, finger, and feel to be normal.[12]

---

[6]    See id.

[7]    See Tr. 568.

[8]    See Tr. 501-05.

[9]    See Tr. 502.

[10]   See id.

[11]   See Tr. 509.

[12]   See Tr. 503.

Dr. Chary found no loss of motor function.[13]  Even so, Dr. Chary assessed Plaintiff's ability to lift and carry to be limited to about five pounds.[14]

September 8, 2015, Leah C. Folb, M.D., noted that Plaintiff experienced fatigue and joint pain and swelling associated with fibromyalgia.[15]  The following month, Plaintiff applied for disability insurance benefits claiming an inability to work since the alleged disability onset date due to hematological disorder, bipolar disorder, heart problem, headaches, peripheral neuropathy, sleep apnea, and memory loss.[16]

In a Function Report completed about the same time, Plaintiff reported muscle and joint weakness and chronic fatigue.[17]  She specifically noted that her arms and legs were too weak for her to perform house or yard work.[18]  "My muscles are weak[;] . . . I can['·]t hold things."[19]  Plaintiff also reported experiencing paresthesia in her hands and feet.[20]  As ADLs, Plaintiff only listed

---

[13]    See id.

[14]    See id.

[15]    See Tr. 553, 556.

[16]    See Tr. 145-46, 158, 347-57, 390.  Plaintiff also applied for supplemental security income, but that application did not proceed to disability assessment.  See Tr. 358-62.  Additionally, a prior application was denied in July 2015 upon reconsideration.  See Tr. 387, 492.

[17]    See Tr. 406, 411.

[18]    See Tr. 408.

[19]    Tr. 414.

[20]    See id.

taking medication, napping, and sitting on the couch.[21]  Plaintiff mentioned that her tendency to drop items dissuaded her from preparing meals.[22]

On November 23, 2015, Karen Lee, M.D., ("Dr. Lee"), a medical consultant, reviewed Plaintiff's administrative record and completed a physical RFC assessment.[23]  Of particular note, Dr. Lee opined that Plaintiff could occasionally to lift and/or carry fifty pounds and frequently to lift and/or carry twenty-five pounds.[24] As additional explanation, Dr. Lee cited "normal strength in all of [Plaintiff's] extremities, normal gait, ability to handle and finger, and normal grip strength."  On December 4, 2015, the SSA notified Plaintiff by mail of its initial determination of not disabled under the SSA rules.[25]

On January 29, 2016, Plaintiff completed a second Function Report, stating that pots and pans were too heavy for her to lift and that, when doing laundry, she lifted one piece at a time.[26]  At that time, Plaintiff's ADLs included transporting her children to and from school, watching television, reading, and taking

---

[21]    See Tr. 407.

[22]    See Tr. 409.

[23]    See Tr. 150-51.

[24]    See Tr. 150.

[25]    See Tr. 145-56, 171-74.

[26]    See Tr. 427.

medications.[27]  In an addendum, Plaintiff stated that she could not hold a pen long enough to complete paperwork "due to the constant burning in [her] fingertips" and that she "[could]n't lift a jug of milk with 1 hand[,] . . . [could]n't lift anything (over 5 pounds) that [did]n't have a handle even with 2 hands because of coordination[.]"[28]

On March 30, 2016, Nancy Childs, M.D., ("Dr. Childs"), a medical consultant who reviewed Plaintiff's physical condition on reconsideration, found it contained "[i]nsufficient evidence to make a medical assessment."[29]  Dr. Childs found that a consultative examination was "needed to fully evaluate alleged limitations/impairments."[30]  On April 8, 2016, the SSA notified Plaintiff by mail of an unfavorable decision upon reconsideration.[31] On May 20, 2016, Plaintiff requested a hearing before an ALJ.[32]

At appointments in May and June 2016, Dr. Lux charted that Plaintiff experienced weakness and, at the June 2016 appointment, that she was often unable to perform ADLs because of pain.[33]

On June 22, 2016, Dr. Lux completed a Physical Assessment in

---

[27]    See Tr. 426.

[28]    Tr. 433, 435.

[29]    Tr. 163.

[30]    Id.

[31]    See Tr. 157-68, 176-78.

[32]    See Tr. 179-80.

[33]    See Tr. 665, 668.

which he listed severe autoimmune thyroiditis, fibromyalgia, depression, bipolar disorder, migraine headaches, positive antinuclear antibody ("ANA") test,[34] attention deficit hyperactivity disorder ("ADHD"), and peripheral neuropathy as Plaintiff's diagnoses.[35]  He opined that Plaintiff's symptoms were constantly severe enough to interfere with Plaintiff's attention and concentration for even simple work-related tasks.[36]

In Dr. Lux's opinion, Plaintiff would need to recline or lie down more than allowable during typical work-day breaks and that she would need to take unscheduled breaks often.[37]  He also opined that Plaintiff could stand and/or walk for zero hours in an eight-hour workday.[38]  Dr. Lux opined that Plaintiff could never lift and carry any weight, that she could grasp, turn, twist objects with her hands, reach with her arms, and manipulate objects with her fingers each less than five percent of the time.[39]  He also estimated that Plaintiff would miss more than four workdays per

---

[34]     An ANA test assists in evaluating for autoimmune disorders.  See What is an Antinuclear Antibody Test?, WebMD (Feb. 16, 2019), https://www.webmd.com/a-to-z-guides/what-is-an-antinuclear-antibody-test#1.

[35]     See Tr. 670.  Dr. Lux listed another diagnosis as well, but his handwriting was illegible.  See id.

[36]     See id.

[37]     See id.

[38]     See id.

[39]     See id.

month.[40]

On October 27, 2016, The ALJ granted Plaintiff's request for a hearing and scheduled it on January 11, 2017.[41]

On December 14, 2016, Dr. Lux completed a second Physical Assessment in which he listed fatigue, attention deficit hyperactivity disorder, hypothyroidism, hypertension, migraine headaches, depression, and peripheral neuropathy as Plaintiff's diagnoses.[42] He opined that Plaintiff's symptoms were constantly severe enough to interfere with Plaintiff's attention and concentration for even simple work-related tasks.[43]

In Dr. Lux's opinion, Plaintiff would need thirty- to ninety-minute breaks every hour and would need to recline or lie down more than allowable during typical work-day breaks.[44] He also opined that Plaintiff could stand and/or walk for no more than one to two hours in an eight-hour workday and could sit for no more than one to two hours in an eight-hour workday.[45] Dr. Lux limited lifting and carrying to less than ten pounds occasionally, grasping, turning, and twisting objects with her hands and reaching with her arms each to one to five percent of the time, and manipulating with

---

[40]   See Tr. 671.

[41]   See Tr. 198.

[42]   See Tr. 642.

[43]   See id.

[44]   See id.

[45]   See id.

her fingers to zero percent of the time.[46]  He also estimated that Plaintiff would miss more than four workdays per month.[47]

At the January 2017 hearing, Plaintiff and a vocational expert testified.[48]  Plaintiff explained that she had been unable to work since September 2014 because, among other issues, she "[could]n't use [her] hands a lot[]" and "drop[ped] things, br[oke] things."[49] She also described stinging and burning in her hands and wore gloves to "level[] out sting and burn[.]"[50] Plaintiff said that she did not contribute to the completion of housework because she would experience shortness of breath.[51]  She added that she was unable to carry batches of laundry and tried to move laundry from washer to dryer in small amounts but that effort also caused shortness of breath.[52]  When asked how much she could lift, Plaintiff said, "Oh, I don't lift anything. . . . I can't do a jug of milk without two hands. . . . And even then I can't hold it long."[53]

The ALJ decided that additional consultative examinations were in order to assist him in making a "proper decision on the case"

---

[46]    See id.

[47]    See Tr. 643.

[48]    See Tr. 95, 99-142.

[49]    Tr. 108.

[50]    Tr. 112.

[51]    See Tr. 116.

[52]    See id.

[53]    Tr. 122; see also Tr. 121.

because Plaintiff's "diagnoses, even from her own doctors[,] . . . is confusing and somewhat mixed."[54]  The ALJ indicated that he would send Plaintiff for a consultative examination with a rheumatologist "[t]o get a better understanding of the fibromyalgia type symptoms[] because she seems to be hurting all over, and [he] [did]n't have anything too definitive."[55]  The ALJ also found the mental health records confusing and stated that he would also send Plaintiff for a consultative examination with a psychologist.[56]

On February 10, 2017, Farzana Sahi, M.D., ("Dr. Sahi") performed a second internal medicine consultative examination.[57] Dr. Sahi recorded in her report that Plaintiff was unable to clean her house or cook, that she was able to hold a cup of coffee and to open a jar lid with difficulty.[58]  Dr. Sahi wrote, "Based on current evidence, the patient has severe restriction based on both her physical and psychological disorder[s]."[59]

In her report, Dr. Sahi did not comment on Plaintiff's ability to lift and/or carry.[60]  Immediately following her report in the record is a Medical Source Statement of Ability to Do Work-Related

---

[54]     Tr. 124-25.

[55]     Tr. 127.

[56]     See Tr. 127-29.

[57]     See Tr. 756-59.

[58]     See Tr. 756.

[59]     Tr. 759.

[60]     See Tr. 756-59.

Activities (Physical), which Dr. Sahi completed on the same day as Plaintiff's consultation.[61]  However, that medical source statement bears the name and social security number of someone other than Plaintiff.[62]  Therein, Dr. Sahi opined that the individual could occasionally lift up to twenty pounds and frequently lift up to ten pounds but left blank the section on how much of a workday the individual could sit, stand, or walk, handwriting a note in that section that read, "Can[']t do 8h work[.]"[63]

The ALJ scheduled a second hearing on August 11, 2017.[64]  In an undated letter submitted shortly before the second hearing, Plaintiff attributed "joint and muscle weakness and pain, muscle tremors, and nerve pain" to both autoimmune disease and chronic fibromyalgia.[65]  Plaintiff explained that excess burning in her toes, fingers, and arms precipitated increased weakness in her wrists, hands, ankles, and legs.[66]  "I have dropped crockpots [sic] shattering them.  I recently shattered my glass cook top trying to put away a rolling pin and dropping it."[67]

---

[61]     See Tr. 791-96.  Dr. Sahi's report on Plaintiff's examination is in the record twice.  See Tr. 756-59, 787-90.  Only the later submission is followed by Dr. Sahi's medical source statement on the other individual.  See Tr. 787-96.

[62]     See Tr. 791-96.

[63]     Tr. 792.

[64]     See Tr. 257.

[65]     Tr. 489; see also Tr. 44, 490-95.

[66]     See Tr. 490.

[67]     Id.

At the second hearing, Plaintiff, medical expert Kweli Amusa, M.D., ("Dr. Amusa"), and a vocational expert testified.[68]  The ALJ confirmed the information from the prior hearing with Plaintiff, including the reports of dropping items and feeling stinging and burning in the hands.[69]  The ALJ and Plaintiff's attorney clarified other information and solicited an update on Plaintiff's condition.[70]

The testimony of Dr. Amusa began with a review of parts of the relevant medical record and clarification that her testimony would cover only the physical conditions.[71]  Dr. Amusa offered her impression of Plaintiff's physical impairments:

> For the severe physical impairments, that would be fibromyalgia . . . . . [I]t was difficult to tease things out with regard to that severe impairment which would be considered physical, simply because . . . you would get similar symptoms with the mental impairments of depression and anxiety. . . . So, the evidence does show [Plaintiff] complains of fatigue and complains of arthralgias during the consultative exam that she had this year identified 18 out of 18 tender points.  Not anything else though that constitutes it has be a problem for about a year with some generalized musculoskeletal pain [INAUDIBLE]. . . . On physical exam, the consultative examiner felt [Plaintiff] could -- on Page 7[72] felt the patient could lift 20 pounds occasionally and ten pounds frequently, that [Plaintiff] would have

---

[68]    See Tr. 42, 45-92.

[69]    See Tr. 53.

[70]    See Tr. 42-70.

[71]    See Tr. 70-75.

[72]    This citation references the medical source statement completed by Dr. Sahi on another individual.  See Tr. 791-96.

12

some problems with, apparently, things such as shopping.[73]

Regarding Plaintiff's RFC, Dr. Amusa opined that Plaintiff was able to lift twenty pounds occasionally or ten pounds frequently and stand and/or walk or sit for six hours out of an eight-hour workday with certain postural limitations.[74] When Plaintiff's attorney questioned Dr. Amusa on the basis for her opinion that Plaintiff could perform the exertional demands of light work, Dr. Amusa did not directly answer the question.[75] Rather, she commented that the medical source statement that appeared in the record as part of Plaintiff's consultative examination was "somewhat conflicting" with the record because it included "extreme limitations."[76]

The ALJ posed a hypothetical individual capable of working at a light exertional level with multiple nonexertional limitations.[77] The vocational expert opined that the individual described would not be able to perform Plaintiff's past relevant work but would be able to perform other jobs that existed in the regional and national economy.[78] The ALJ then added that the individual would have good days and bad days and, as a result, would miss work at

---

[73]   Tr. 76-77.

[74]   See Tr. 79.

[75]   See Tr. 82-83.

[76]   Id.

[77]   See Tr. 89-90.

[78]   See Tr. 90-91.

least four days per month.[79]  The vocational expert opined that such an individual would not be able to perform any other work.[80]

**D.  Commissioner's Decision**

On September 21, 2017, the ALJ issued an unfavorable decision.[81]  The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 9, 2014, the alleged onset date.[82]  The ALJ recognized the following impairments as severe:  "fibromyalgia;  Ha[s]himoto['s]  disorder; bipolar/personality disorder; and headaches[.]"[83] However, he found "obstructive sleep apnea and a heart condition" to be nonsevere impairments and peripheral neuropathy in her extremities to be a non-medically determinable impairment.[84]

At the next step of the analysis, the ALJ found that Plaintiff did not meet the requirements of any impairment identified in the regulations a presumptively disabling[85] (the "Listings").[86]  The ALJ determined that Plaintiff was capable of the exertional demands of light work with certain additional nonexertional limitations.

---

[79]     See Tr. 91.

[80]     See id.

[81]     See Tr. 16-34.

[82]     See Tr. 21.

[83]     Tr. 21.

[84]     See Tr. 21-22.

[85]     See 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[86]     See Tr. 22-24.

The ALJ found Dr. Lux's RFC assessment and an unsigned assessment of exertional limitations entitled to little weight because he found them conclusory, lacking explanation, and inconsistent with consultative examinations.[87]   The ALJ accorded little weight to Dr. Sahi's opinion that Plaintiff could not perform full-time work because it "appear[ed] to be based primarily upon [her] subjective allegations and is inconsistent with Dr. Sahi's overall examination findings."[88]

The ALJ also gave little weight to Dr. Lee's opinion on review of Plaintiff's application at the initial level because it was inconsistent with Plaintiff's subjective allegations, evidence submitted after she offered her opinion, and Dr. Amusa's testimony.[89]

Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff was unable to perform her past relevant work.[90]   However, considering Plaintiff's age as a younger individual, her education, her work experience, and her RFC, the ALJ found Plaintiff was able to perform the occupations of office cleaner, garment sorter, and packager.[91]   Accordingly, the ALJ found

---

[87]   See Tr. 30-31.  The one-page, unsigned, and possibly incomplete form also did not identify the date of the assessment or the name of the patient.  See Tr. 737.

[88]   Id.

[89]   See Tr. 32.

[90]   See id.

[91]   See Tr. 33.

15

that Plaintiff was not disabled at any time from the alleged onset date to the date of the ALJ's decision.[92]

On October 5, 2017, Plaintiff appealed the ALJ's decision.[93] On June 18, 2018, the Appeals Council denied Plaintiff's request for review, thereby transforming the ALJ's decision into the final decision of the Commissioner.[94]   After receiving the Appeals Council's denial, Plaintiff timely sought judicial review of the decision by this court.

## II.   Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: 1) the ALJ applied proper legal standards in evaluating the record; and 2) substantial evidence in the record supports the decision.  Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002).

## A.  Legal Standard

In order to obtain disability benefits, a claimant bears the ultimate burden of proving she is disabled within the meaning of the Act.  Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . .

---

[92]   See Tr. 19, 34.

[93]   See Tr. 343.

[94]   See Tr. 1-5.

16

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a); see also Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).   The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3), (d)(5)(A); Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless [s]he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to [a Listing] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that [s]he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform h[er] previous work as a result of h[er] impairment, then factors such as h[er] age, education, past work experience, and [RFC] must be considered to determine whether [s]he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520.  The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. Greenspan, 38 F.3d at 236.

## B.  **Substantial Evidence**

Substantial evidence "means—and means only—such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, ____ U.S. ____, 139 S. Ct. 1148, 1154 (2019)(internal quotations marks omitted).  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Id. It only requires "more than a mere scintilla." Id.

The Commissioner has the responsibility of deciding any conflict in the evidence. Id. If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm. 42 U.S.C. § 405(g).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. See Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).  In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless. Id.

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.  Plaintiff asserts that the ALJ's

decision contains the following errors: (1) failure "to adequately assess Plaintiff's fibromyalgia at [s]tep [t]hree[;]" and "reli[ance] on [the medical expert's] testimony that was insufficient to support the RFC[;]" and (2) "analysis of Plaintiff's mental condition [that was] insufficiently developed to conclude that it stands as substantial evidence in support of her RFC.[95]   Defendant argues that the ALJ's decision is legally sound and is supported by substantial evidence.

As mentioned at the start of this memorandum, the only issue that the court need address is Plaintiff's argument that the ALJ improperly relied on the medical expert's opinion in assessing Plaintiff's RFC.  The ALJ may rely on the opinion of a nonexamining physician to the extent explained in the regulations.  See 20 C.F.R. § 404.1527 (applying to claims filed before March 27, 2017). However, if the ALJ relied on inaccurate medical expert testimony and the claimant was prejudiced by the ALJ's reliance on that testimony, the error may warrant reversal of the ALJ's decision. Cf. Carey v. Apfel, 230 F.3d 131, 143 (5th Cir. 2000).  In Carey, the court was not convinced that the ALJ had unjustifiably relied on inaccurate testimony from the medical expert and concluded that the plaintiff there "was not prejudiced by any inconsistency between the medical expert's testimony and the medical records[.]" Id.

---

[95]   Doc. 12, Pl.'s Mem. in Support of Mot. for Summ. J. p. 1 (emphasis omitted).

This case differs from <u>Carey</u>. Here, Dr. Amusa's testimony was inaccurate and inconsistent with the record as a whole. Dr. Amusa applied Dr. Sahi's RFC opinion concerning another individual entirely to conclude that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds. That conclusion was inconsistent with the opinions of Plaintiff's treating physicians Dr. Alikhan and Dr. Lux and consulting examiner Dr. Chary who all found Plaintiff capable of lifting no more than ten pounds. Additionally, nothing in treatment notes of Dr. Folb or the report of Dr. Sahi contradicts that weight limitation.

Additionally, nothing in Plaintiff's subjective testimony on her abilities and ADLs as found in her function reports and letters to the SSA and in her hearing testimony suggests the ability to lift and/or carry more than ten pounds. Plaintiff consistently reported that picking up laundry, kitchen items, and milk containers, for example, was beyond her capability. The combined objective and subjective record evidence supported a finding that Plaintiff was capable of no greater exertion than required by sedentary work. <u>Cf.</u> 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.").

Only Dr. Lee's opinion on initial review of Plaintiff's application suggested Plaintiff could lift more than ten pounds.

Dr. Lee's opinion of Plaintiff's capability so greatly exceeded the 10-pound upper limit supported by the objective and subjective evidence as to raise the query whether she too relied on medical records of another person.   Regardless, the ALJ found Dr. Lee's opinion entitled to little weight and clearly did not rely on her estimation in determining Plaintiff's RFC.

However, the ALJ clearly did rely on Dr. Amusa's opinion that Plaintiff could lift twenty pounds occasionally and ten pounds frequently as he included it as evidence in his decision and accorded Dr. Amusa's testimony great weight.   But the only source in the record to support such a finding was an evaluation of someone other than Plaintiff.   In fact, that is precisely the source cited by Dr. Amusa.

The ALJ improperly relied on Dr. Amusa's inaccurate testimony over the opinions of treating physicians, as well as an consultative examiner.   When a treating source's opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record, it is to be given controlling weight. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188, at *1.

The question whether Plaintiff was prejudiced by the ALJ's improper reliance on Dr. Amusa's opinion must also be answered in Plaintiff's favor.   The ALJ's reliance prompted his posing to the

vocational expert a hypothetical individual capable of the exertional demands light work, which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The vocational expert found the proposed individual able to perform other work. The ALJ relied on the vocational expert's testimony in finding Plaintiff not disabled. However, the vocational expert's testimony may serve as substantial evidence only if it is based on a hypothetical question that incorporates all of the limitations appropriately recognized by the ALJ. See Masterson v. Barnhart, 309 F.3d 267, 273-74 (5th Cir. 2002)(citing Boyd v. Apfel, 239 F.3d 698, 707 (5th Cir. 2001)). The ability to perform light work was not supported by substantial record evidence. Therefore, the vocational expert's testimony could not serve as substantial evidence in support of the ALJ's conclusion that Plaintiff was not disabled.

Although the ALJ also posed a hypothetical individual with a more restrictive RFC, he did not change the exertional level of the work. Rather, he imposed the additional restriction of a waxing and waning condition that would result in the individual missing more than four days of work per month. The vocational expert opined that such an individual could not perform any work. Unfortunately, that answer did not address whether any other work existed for an individual with the capability of the exertional

22

demands of no greater than sedentary work with the additional nonexertional limitations recognized by the ALJ.  The court finds that the limitation to sedentary work might alter the vocational expert's answer and thus the ALJ's conclusion.

The case must be remanded for further consideration consistent with this opinion.  On remand, the Commissioner must address the whether a limitation to sedentary work would change the ALJ's determination that Plaintiff was not disabled.  The Commissioner may also address, if he finds it appropriate, the other issues raised by Plaintiff, namely, whether the record needs further development, whether Plaintiff's condition qualifies as presumptively disabling under the Listings and/or SSR 12-2p, and whether additional mental limitations would be appropriately included in Plaintiff's RFC.

### IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Cross-Motion for Summary Judgment be **DENIED** and Plaintiff's Motion for Summary Judgment be **GRANTED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual

23

findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this $\underline{7^{th}}$ day of January, 2020.

Nancy K. Johnson
United States Magistrate Judge

24